BARRY R. FEERST & ASSOCIATES (BRF-3836)
Attorney for Plaintiff
194 South 8th Street
Brooklyn, New York 11211
(718) 384-9111

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
AUDREY BRETILLOT,

                                   Plaintiff,              **AMENDED COMPLAINT**

        -against-

CLIVE BURROW, URBAN CART,                    `14cv7633`
LINDSAY PERTH, LANDSKAPP,
IAN DEWSBERY, LOVELL JOHNS,
RICK TARDIFF, CONRAD AYOTTE,
J.S. McCARTHY PRINTERS,
MITCHELL NEWMAN, JIM BERRY,
MITCHELL'S NY DATA MOVERS,

                                   Defendants.
------------------------------------------------------X

        Plaintiff AUDREY BRETILLOT ("Bretillot"), by her attorneys, BARRY R. FEERST &

ASSOCIATES, complaining of the defendants, alleges as follows:

                              **JURISDICTION AND VENUE**

        1. This is an action for copyright infringement of a Map image registered with the United

States Copyright Office, and of other images whose registration is currently pending, brought

pursuant to the federal Copyright Act of 1976, as amended, 17 U.S.C.A. §§101 et. seq.  This

Court has original and exclusive jurisdiction of the copyright claims in this action pursuant to

Sections 1331 and 1338(a) of the Judicial Code (28 U.S.C.A. §§1331 and 1338(a)) as well as

jurisdiction of any related state claims pursuant to its supplemental jurisdiction.

2. Venue is proper before this court pursuant to 28 U.S.C.A. §1391(b), which grants jurisdiction in non-diversity actions in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated."  Venue is proper in this court for any related state claims under the doctrine of pendent venue.

<u>**PARTIES**</u>

3. Audrey Bretillot ("Bretillot") is a graphic artist and designer, who is a citizen and resident of the State of New York.

4. Clive Burrow ("Burrow") is a citizen of the United Kingdom, who resides and transacts business in the State of New York.

5. Urban Cart ("UCart") is a business entity that was organized and is owned by Burrow, which transacts business in the State of New York.

6. Upon information and belief, Landskapp is a foreign business entity providing graphic design and related art services, which transacts business in the State of New York.

7. Upon information and belief, Lindsay Perth ("Perth") is a citizen of the United Kingdom, who is a staff member of Landskapp and who transacts business in the State of New York on behalf of Landskapp.

8. Upon information and belief, Lovell Johns ("Johns") is a foreign business entity providing graphic design and related art services, which transacts business in the State of New York.

9. Ian Dewsbery ("Dewsbery") is a citizen of the United Kingdom and a Senior Cartographer/Designer at Johns, who transacts business within the State of New York in his capacity as a designer for Johns.

-2-

10. Upon information and belief, Defendant J.S. McCarthy Printers ("JSMP") is a business entity engaged in the printing business, operating out of the State of Maine, that transacts business in the State of New York.

11. Upon information and belief, Defendant Rick Tardiff ("Tardiff") is a citizen of the State of Maine who is the CEO of JSMP, and who transacts business in the State of New York on behalf of JSMP.

12. Conrad Ayotte ("Ayotte") is a citizen of the State of Maine, and is the CFO of JSMP that transacts business in the State of New York.

13. Mitchell's NY Data Movers ("MNDM") is a business entity that transacts business in the State of New York.

14. Mitchell Newman ("Newman") is a citizen of the State of New York, and the owner of MNDM , and who transacts business on behalf of MNDM in the State of New York.

15. Jim Berry ("Berry") is a citizen of the State of New York, is the President of MNDM, and who is engaged in business on behalf of MNDM within the State of New York.

## THE PROTECTED WORKS

16. Plaintiff repeats paragraphs **"1"** through **"15"**.

17.  Bretillot is the creator, author and designer of a map of the City of New York, the copyrighted work that is the primary subject of this action.

18.  The map is an original work by Bretillot, and is copyrightable subject matter under the laws of the United States and the subject of the claims asserted herein.

19. The map is an original copyrightable work fixed in a tangible medium of expression pursuant to 17 U.S.C.A. §102(a).

20. The Map was registered with the United States Copyright Office in accordance with

Title 17 of the United States Code (hereinafter, the "Map"), and Bretillot owns the copyright in the Map, as well as several additional works (hereinafter, "Other Works") which have been submitted to the Copyright Office for registration, and processing of the registrations for these Other Works are currently pending before the Copyright Office: the case numbers are Manhattan pad map #1-1415442898; Times Square map #1-1415442959; Broadway map #1-1415442990. A copy of registration certificate #VA 1-917-498 of the Map, effective date April 25, 2014, is attached as Exhibit "1."

21. The Map, and the Other Works, are distributed gratis by hotel concierges and visitor centers.  The reproduction and distribution of the Map and the Other Works is paid for, and produces income for, Bretillot through distribution by NY Tab Inc. ("NYT") an entity that Bertillot owns, controls and operates, by the advertising on the Map and Other Works, which is purchased by various entities, including theatrical shows and businesses.

22. The Map is identified as the product created by Bretillot and distributed by NYT by red stripes printed at the top and bottom of the front and back of each folded Map.

23. The identifying red stripes on the Map are printed with a curved corner resembling the label tabs on file folders.  The Map contains a typographical legend in distinctive type on the red strip/tab appearing at the top of the Map, bearing the legend "Manhattan Concierge Map."

24. The Other Works likewise are also identified as the products of Bretillot as distributed by NYT by distinctive color strips and typography, which are closely mimicked by products manufactured and marketed by the defendants (the "Lookalikes") which contain similar typography and red and gray color strips.

25. Bretillot has devoted an enormous amount of time and resources to the creation of her original artwork, and has created numerous original graphic elements in the production of the

Map.

26. The Other Works include an additional pad map of Manhattan and maps of Times Square, Broadway, Downtown Manhattan, Brooklyn, the East River Ferry (New York), London and Central London, and New York maps customized for Continental Guest Services and CityTickets.

27. Bretillot exercises strict quality control to ensure that the Map and her Other Works maintain their reputation for a high standard of excellence. She has expended large sums of money to guarantee high-quality reproductions of her original artwork and designs, including the preparation of color separations and printing plates which faithfully and accurately reproduce her works, and the hiring of printing facilities and a staff of skilled personnel to produce high quality reproductions of the Map.

## FACTUAL BACKGROUND

28. Plaintiff repeats paragraphs **"1."** through **"27."**

29. Since on or about 2004, Bretillot has been and is currently engaged in the business of creating, reproducing and distributing a diverse line of tourist maps that are distributed throughout New York City and the surrounding area, and elsewhere.

30.  These tourist maps include the Map and the Other Works.

31. Bretillot designed and produced the Map for the tourist market in New York City. Approximately 4 million of the Maps and Other Works are currently distributed to hotel concierges and visitor centers throughout the City NYT.

32. Bretillot devotes, and has devoted, enormous effort and resources in promoting and marketing the Map, which incorporates her original artwork, designs, and graphic elements, and in building up public recognition and demand.  She has built a valuable business and enviable

reputation by reason of the distinct styling, good taste, and quality of her products, and for that reason, her original artwork, designs, and graphic elements are identified by the public with Bretillot.

33. During the period from 2003 to 2013, Bretillot, her now-estranged husband, Burrow, and their two children occupied the upper three floors of their residence at 138 Beekman Street, New York, NY. The ground floor of the residence was used exclusively for the business of Bretillot and her enterprises.

34. The Map and Bretillot's Other Works were licensed to NYT for reproduction and distribution.

35. Burrow was employed by NYT for several years as an executive for several years, until Bretillot discharged him on August 14, 2013.

36. At no time during his employment as an executive of NYT did Burrow have any license, express or implied, to reproduce, distribute, or copy the Map or the Other Works save as an agent of NYT, or as directed by NYT.

37. In pursuit of maintaining her standards of quality for the Map and the Other Works, Bretillot entered into commercial relationships with JSMP to print the Map and the Other Works, and MNDM to aggregate the advertisements which paid for the Map and the Other Works, and to distribute them.

38. During his period of employment by NYT, Burrow had access to emails, contacts, bank accounts, drafts, designs, proprietary data and similar confidential materials of NYT, including the original digital files of the Map and the Other Works, and contact information for JSMP and MNDM.

39. On or about June 26, 2013, Burrow surreptitiously removed Bretillot's MacBook Pro laptop computer, which contained data files and material proprietary to Bretillot and to NYT, including data files of the Map and of the Other Works, took possession of it and without the knowledge of or authorization by Bretillot sent this computer, addressed to himself, to the Knickerbocker Club. A copy of the shipping documents is attached as Exhibit "2."

40. Burrow's taking of the laptop computer was for the purpose of creating Lookalikes.

41. By direct communication with its regional sales manager, Phil St. Germain, JSMP was placed on notice by Bretillot that the Map files retained on JSMP's database must not be released.

42. Upon information and belief, during 2013 Burrow engaged Johns and Dewsbury, who was employed by Johns, as cartographers, to modify the Map and the Other Works in order to create the Lookalikes, using their skills to distinguish the Lookalikes from the Map and the Other Works.

43. On or about August 13, 2013, the day before he was discharged, Burrow exchanged email correspondence with Dewsbury in which Burrow was asked to "post the maps," meaning, send them by email, to Dewsbury's home address, which Burrow complied with.

44. Burrow's removal of the laptop containing the files of the Map and the Other Works, and his forwarding of these files to Dewsbury, constituted a breach of his fiduciary duties to NYT, by which he was employed at the time.

45. On or about August 16, 2013, Bretillot announced to her customers and commercial connections by email that Burrow was no longer employed by NYT.

46. Thereafter, JSMP and MNDM were on actual notice that Burrow was no longer associated with NYT, and accordingly had no license or right either to represent himself as being a representative of NYT, or to reproduce or distribute works proprietary to Bretillot and NYT.

47. Following his termination, Burrow pursued his preparations for producing the infringing Lookalikes, begun prior to his dismissal, both with graphic designers Johns and Dewsbury, and by approaching JSMP to reproduce and ship them.

48. Upon information and belief, subsequent to his separation from NYT Burrow continued to falsely represent himself as being connected to and representing NYT, at least as late as November 11, 2013 if not also thereafter, for the purpose of soliciting business for the Lookalikes when produced.

49. On or about August 19, 2013, Dewsbury and Burrow agreed that Dewsbury would reconfigure the Map to further disguise its origin and avoid detection of Burrow's infringement.

50. Upon information and belief, Burrow also hired Perth and Landskapp to further modify the Map in order to further disguise the Lookalike's similarity to the Map.

51.  By email dated August 23, 2013, attached as Exhibit "3", Burrow and Dewsbury agreed that the pirated maps would be disguised to stand on their own as a separate product line.

52. Upon information and belief, Burrow contacted Tardiff and Ayotte to hire JSMP to print the Lookalikes and assist Burrow in competing with Bretillot.

53. Upon information and belief, Burrow then hired Newman, Berry and MNDM to distribute the Lookalikes and to thereby assist Burrow in marketing the Lookalikes.

54. The Lookalike emulates the Map's protected graphic elements and bears substantial similarities to the Map which evidence copying rather than independent creation or coincidence.

55. The similarities between the Map and the Lookalike include, but are not limited to,

similarities in drafting and layout, coloration, typography, and various artistic and editorial choices.  These similarities are itemized in detail on a schedule attached as Exhibit "4."

56.  The similarity between the Map and the Lookalike also extends to the Map's trade dress, specifically the bars of red at the top and bottom of the front and back of the Map, and the typography thereon.

57. Burrow has been, and is, publishing and selling the Lookalikes under the trade name Urban Cart, such trade name appearing on a label affixed to the Lookalikes.

58. Upon information and belief, the Lookalike was first distributed by Burrow on or about June 13, 2014, approximately seven weeks after the effective date of Bertillot's registration of the Map.

59. Since 2013, Burrow has been and is falsely representing himself to be an agent of NYT, as illustrated by a Calendar Invitation from Krystal Eng, Director of Front Office at the Hilton New York, for a "Meeting with Clive- NYTab to meet and discuss future prints coming up" (See, copy of email attached as Exhibit "5").

60. Burrow's conduct will, unless enjoined, cause irreparable harm, damage and injury to Bretillot, in that the distribution and sale of the Lookalikes will severely diminish the value of the Map by diluting the market, destroying the distinctiveness of the Map and its identity as being the exclusive property and work of Bretillot.

61. The publication, distribution and offering for sale of Lookalikes of the Map and of the Other Works causes confusion and mistake not only by the public, but also by the hotel concierges who distribute the Map and the Other Works and who, in many instances, do so because of its unique and distinctive character.

62. The publication, distribution and offering for sale of the Lookalikes will result in the

impairment of the future use and enjoyment by Bretillot of her own original works, in that it is customary in Bretillot's business for the designer to adapt and reproduce their original art work, designs, and art styles in other versions, and adaptations, and arrangements encompassed within their existing product line, as well as to develop new products utilizing their art work, designs, and art styles of the existing product line.

63. Upon information and belief, Burrow has acquired and is acquiring other and different items of Bretillot's original, copyrighted and exclusive art work, designs, and art styles, with the intent and purpose of utilizing such art for unauthorized and wrongful copying, and for use in the production of Lookalikes causing Bretillot irreparable harm, damage and injury.

64. On or about September 8, 2014, Bretillot caused to be filed a takedown notice under the provisions of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C.A §512(c)(3), demanding the removal of Burrow's and Urban Cart's infringing material from Urban Cart's website.  While this notification was temporarily successful, such takedowns are by their nature temporary, and the restoration of the infringing material online in part prompted the current action.

## COUNT ONE - PRELIMINARY INJUNCTION

65. Plaintiff repeats paragraphs **"1."** through **"64."**

66. Bretillot is in possession of a copyright registration of the Map duly issued by the United States Copyright Office, which carries prima facie evidence of validity.

67. Continuously since on or about June 13, 2014, Burrow, individually and through Urban Cart, has been publishing, selling, distributing and otherwise marketing maps which infringe Bretillot's copyrights, and which violate Bretillot's trade dress in an act of unfair competition, to Bretillot's irreparable damage, which cannot be adequately calculated or

compensated in money damages.

68. Bretillot has demonstrated that defendants had access to the works of authorship proprietary to her, and that defendants contrived to produce unauthorized derivatives of these works, to reproduce them, and to distribute them for profit.

69. Burrow's conduct and that of the other defendants, as described above, is causing and, unless enjoined and restrained by this Court, will continue to cause Bretillot great and irreparable injury that cannot fully be compensated or measured in damages.

70. Defendants continue to distribute these infringing works for profit, to the ongoing damage of Bretillot, for which Bretillot has no adequate remedy at law.

71. By reason of the foregoing, Bretillot has shown a likelihood of success on the merits.

72. By reason of the foregoing, Bretillot has demonstrated that the balance of hardships is in the Plaintiff's favor, in that the Defendants' efforts to reap profit from the works and labors of the Bretillot mandate that justice be served by restraining the Defendants from their actions.

73. Pursuant to 17 U.S.C.A. §502, Bretillot is entitled to preliminary and permanent injunctions prohibiting further infringements upon Bretillot's copyright and her exclusive rights under her copyright.

74. Pursuant to 15 U.S.C.A. §1116, Bretillot is entitled to preliminary and permanent injunctions prohibiting further violations of her and NYT trade dress, and preventing further unfair completion by Burrow.

## <u>COUNT TWO – DIRECT COPYRIGHT INFRINGEMENT</u>

75. Plaintiff repeats paragraphs **"1"** through **"74."**

76. The author of a work, or the rightsholder to that work, holds the exclusive right under the Copyright Law, 17 U.S.C.A. §106, to reproduce and distribute, or authorize the reproduction and distribution, of the protected work, and to authorize derivatives of the original.

77. Maps are specifically included within the works protectable, and protected, under the graphic arts classification, pursuant to 17 U.S.C.A. §§101, 106.

78. Anyone engaging in the unauthorized reproduction or distribution, or creation of derivatives of a copyrighted work is liable for copyright infringement, per 17 U.S.C.A. §106.

79. To demonstrate copying, if the infringing work is not in all aspects identical to the original, it is necessary to prove both access to the infringed work and the substantial similarity of the infringing work to the work infringed.

80. There is no doubt as to the Defendants' access to the Map and the Other Works. Burrow obtained the files for these works from the computer he wrongfully removed from his then-place of employment, and then forwarded these files to Johns, Dewsbury, Landskapp, Perth, and JSMP.

81. Substantial similarity between the Map and the Lookalike may be observed by simple visual comparison, and confirmed by the comparisons set forth in detail in Exhibit "4."

82. The minor points wherein the Lookalike diverges from the original Map serve to point up its substantial similarity to the original, rather than to conceal such similarity, and to emphasize rather than diminish the Defendants' liability.

83. The Lookalike map is clearly a derivative of Bretillot's original Map; the stylistic points in which it is identical, independent of the factual information which is in the nature of a map, have been laid out at length in Exhibit "4."

84. Burrow caused the infringing derivative Lookalike to be created, for his personal benefit, by forwarding files of the original Map to Johns, Dewsbury, Landskapp, and Perth.

85. If Burrow held a genuine belief that as a former employee of NYT he had some right or property interest in the Map, he would have used the Map as is and would not have expended time, money and effort to conceal and alter it in the hope of evading an infringement claim.

86. Bretillot did not authorize the creation, reproduction, or distribution of a derivative Lookalike.

87. Johns, Dewsbury, Landskapp, and Perth knew, or had reason to know, that the files forwarded to them for alteration were not produced by Burrow.

88. JSMP, by it having been placed on actual notice by Bretillot, knew that the files delivered to it by Burrow were not his own, and had reason to know this in addition by reason of its possession of files owned by Bretillot.

89. MNDM, by being placed on actual notice by Bretillot, and by its familiarity with Bretillot's works distributed through NYT, knew that the Lookalike maps for which Burrow sought distribution were infringing derivatives of Bretillot's Map.

90. Accordingly, the infringements by all Defendants were knowing and willful.

91. Upon information and belief, Burrow's first distribution of the printed Lookalike occurred on or after June 13, 2014, some seven weeks after the effective date of Bretillot's registration of the Map with the Copyright Office.

92. "Publication" of a work, pursuant to 17 U.S.C.A. §101, occurs when that work is distributed to the public. Accordingly, pursuant to 17 U.S.C.A. §412(2), Bretillot has a pre-infringement claim because said registration having occurred prior to Burrow's publication.

93. In the event that the evidence establishes in the course of this action that Burrow is actively engaged in producing further infringements involving the Other Works, those Other Works whose registration applications are currently pending before the Copyright Office will entitle Bretillot to claim statutory damages for willful infringement for each such Other Work as Burrow has copied.

94. As a direct and proximate result of Defendants' conduct, Bretillot is entitled to the maximum statutory damages, pursuant to 17 U.S.C.A. §504(c), with respect to each work infringed upon, or such other amounts as may be proper under 17 U.S.C.A. §504.

95. Bretillot is further entitled to recover her attorney's fees and full costs pursuant to 17 U.S.C.A. §505.

96. Burrow, himself and by his commercial entity Urban Cart, are the architects of the infringement of Bretillot's work.

97. It was Burrow who, prior to the formation of Urban Cart, made use of his access to misappropriate the material, imagery and maps proprietary to Bretillot, and it was Burrow and Urban Cart that commissioned and oversaw the creation of the infringing derivatives by Johns, Dewsbury, Landskapp and Perth; their reproduction by Defendant JSMP, and their subsequent distribution by MNDM.

98. Burrow and Urban Cart have taken material proprietary to Bretillot, caused unauthorized derivatives to be made; reproduced them, and distributed them, and continue to distribute them, all of which violate 17 U.S.C.A. §106.

99. Defendants Lovell Johns, Ian Dewsbury, Landskapp, and Lindsay Perth knew, or had reason to know, that the material furnished to them by Burrow for alteration was not produced by him, and that he had no claim of authorship upon it.

100. JSMP, and its officers Tardiff and Ayotte, knew or had reason to know, by their possession of Bretillot's files, and by direct notice from Bretillot, that the material provided to them by Burrow to produce the Lookalikes was not his to reproduce.

101. MNDM, and its officers Newman and Berry, had reason to know by direct notice from Bretillot that the Lookalikes which Burrow and Urban Cart hired them to distribute were infringing copies of protected work.

102. As a result of Defendants' actions as set forth in this Complaint, all the above-named Defendants are jointly and severally liable for direct infringement upon Bretillot's copyrights.

103. Accordingly, Bretillot is entitled to an accounting of Defendants' profits received in the course of their individual infringements, and to recover said profits pursuant to 17 U.S.C.A. §§501, 504 in compensation, or statutory damages as the Court may direct.

## COUNT THREE – CONTRIBUTORY COPYRIGHT INFRINGEMENT

104.  Plaintiff repeats paragraphs **"1"** through **"103."**

105. A person who aids an infringer in the process of infringement, by the contribution of labor or services is liable as a contributory infringer.

106. Defendants Perth, Landskapp, Johns and Dewsbury knew or had reason to know of Burrow's infringement upon the Map, including but not limited to Bretillot's original works.

107. By engaging in the conduct alleged in this Complaint, the Defendants each also induced, caused, and materially contributed to the infringing conduct both by each other and by third parties.

108. JSMP, and its officers Tardiff and Ayotte, knew or had reason to know by their possession of Bretillot's files, and by direct notice from Bretillot, that the material provided to

them by Burrow to produce the Lookalikes was not his to reproduce, and thus materially contributed to the infringements of Burrow and Urban Cart.

109. MNDM, and its officers Newman and Berry, had reason to know by direct notice from Bretillot that the Lookalikes which Burrow and Urban Cart hired them to distribute were infringing copies of protected work, and thus materially contributed to the infringements by Burrow and Urban Cart.

110. Defendants undertook these actions both individually and jointly and conspired and acted in concert with one another to commit such acts, which they knew or had reason to know would damage, violate and infringe upon Bretillot's copyright in the Map, and Other Works.

111. As a result of the unlawful and deliberate conduct as set forth above, Bretillot has been, and will continue to be damaged.

112. Defendants' unlawful conduct, as set in this Complaint, was deliberate, intentional, malicious and willful.

113. As a result of Defendants' actions as set forth in this Complaint, all the defendants are jointly and severally liable for contributory infringement upon Bretillot's copyrights.

114. Accordingly, Bretillot is entitled to an accounting of Defendants' profits received in the course of their joint and several contributions to the production of the infringements, and to recover said profits pursuant to 17 U.S.C.A. §§501, 504 in compensation.

## COUNT FOUR – TRADE DRESS AND UNFAIR COMPETITION

115.  Plaintiff repeats paragraphs **"1"** through **"114."**

116. From the time of his separation from NYT, Burrow embarked upon and engaged in an ongoing effort to commercially compete with and to commercially injure Bretillot.

117. To this end, he embarked upon a course of action that began with his

misappropriation of the material which was the substance of Bretillot's business, meaning, the Map and the Other Works.

118. Burrow then took the material he had misappropriated, and gave it to Johns, Dewsbury, Landskapp, and Perth to tweak and alter in the hope of evading liability.

119. Following alteration of the material he had misappropriated, Burrow approached and engaged JSMP, a printer Bretillot had engaged, to produce the altered Lookalike(s), and further approached MNDM, a distributor Bretillot had engaged, to distribute the altered Lookalike(s) to hotels in direct competition with his former employer.

120. Upon information and belief, beginning on or about mid-2014, and continuing thereafter, Burrow and Urban Cart, without the consent of Bretillot, produced and distributed to hotel concierges and others a Lookalike that is virtually identical to Bretillot's Map.

121. The Lookalike resembles the Map by virtue of its bearing red stripes on its front and back, top and bottom, bearing legends in typography confusingly similar to the typography used to indicate the Bretillot Map produced, marketed and distributed by NYT.

122. The distribution of the Lookalike by Burrow and Urban Cart is likely to confuse and mislead concierges, advertisers and others, and to induce the mistaken belief that the Lookalike is associated with Bretillot, or that the Lookalike is endorsed or sponsored by Bretillot or in some way connected with Bretillot. This confusion is likely to influence the decision of concierges to distribute, advertisers to buy space on and others to request maps from Burrow and or Urban Cart.

123. Burrow's actions in misrepresenting himself as being associated with NYT following his termination increases the likelihood of confusion and is misleading.

124. The acts of Burrow and Urban Cart constitute unfair competition with Bretillot.

Burrow's misrepresentation of himself as having a connection to NYT following his termination of employment, and his use of confusingly similar typography and appearance are false designations of origin as proscribed by 15 U.S.C.A. §1125(a).

125. By reason of Burrow's and Urban Cart's acts of unfair competition as alleged above, Bretillot has suffered and will continue to suffer substantial damage to her business in the form of diversion of trade, loss of profits, and loss of goodwill, and damage to her reputation, all in amounts which are not yet fully ascertainable.

126. Unless restrained and enjoined, defendants' acts of unfair competition as alleged above will cause Bretillot irreparable injury.

127. By reason of Defendants' acts of unfair competition as alleged above, Defendants are liable to Bretillot for the actual damages suffered by Bretillot as a result of said acts of unfair competition, for any additional profits earned by Defendants as a result of said acts, and for punitive damages and attorney's fees as prescribed by 15 U.S.C.A. §1117(a).

## COUNT FIVE - UNJUST ENRICHMENT

128. Plaintiff repeats paragraphs **"1"** through **"127."**

129. Upon information and belief, commencing on or about mid-2014, and continuing thereafter, Burrow individually and through Urban Cart, without the consent of Bretillot, produced and distributed to hotel concierges and others a Lookalike that is virtually identical to the Map.

130. Burrow's distribution of these maps is likely to confuse and mislead concierges and advertisers and others and to induce the mistaken belief that the Lookalike is associated with Bretillot, or that the Lookalike is endorsed or sponsored by Bretillot or in some way connected with Bretillot. This confusion is likely to influence the decision of advertisers and others as to

whether to request maps from Burrow and Urban Cart.

131. Burrow, as a disgruntled former employee, misappropriated proprietary material to which he as a former employee had no shadow of claim, and used it as the basis of a commercial enterprise both for his own benefit and for the purpose of damaging his former employer.

132. By reason of Burrow's acts as alleged above, Burrow has unjustly enriched himself in an amount estimated to be not less than $750,000.00, and Bretillot is entitled to just compensation therefor.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays judgment against all defendants as follows:

1. With respect to the first claim, for injunctive relief:

a. A preliminary and a permanent injunction enjoining Burrow, and all persons acting in concert or participation with him, from: (i) directly or indirectly infringing in any manner any of Bretillot's respective copyrights (whether now in existence or later created), and exclusive rights under copyright, including without limitation, the Map; and (ii) from causing, contributing to, enabling, facilitating, or participating in the infringement of any of Bretillot's respective copyright, and exclusive rights under copyright, including without limitation, the Map; and

b. That Burrow and JSMP be required to deliver to be impounded during the pendency of this action all copies of the Lookalikes in their possession or under their control, and to deliver up for destruction all infringing copies, including but not limited to computer files, data, disks or transparencies.

2. With respect to the second and third claims for relief, for copyright infringement:

a. All losses or actual damages of Bretillot, the exact sum to be proven at the time of trial,

or, if elected at trial, statutory damages, as available under the Copyright Act, 17 U.S.C. §§101 et seq., plus all profits of Burrow and Urban Cart, of JSMP and MNDM and their officers as named; and that Defendants Landskapp, Perth, Johns and Dewsbury be required to account for all their gains, profits and advantages derived by them in their assistance to Burrow in creation of the infringing Lookalikes, and be required to pay such gains and profits to Bretillot; and

b. That Burrow, Urban Cart, JSMP and MNDM be required to deliver to be impounded during the pendency of this action all copies of the Lookalikes in their possession or under their control, and to deliver up for destruction all infringing copies, including but not limited to computer files, data, disks or transparencies; and

c. Attorneys' fees as available under the Copyright Act, 17 U.S.C. §§101 et seq.

3. With respect to the fourth claim for relief, for trade dress violation and unfair competition:

a. That Burrow be required to pay to Bretillot such damages as Bretillot has sustained in consequence of Defendant's violation of Bretillot's trade dress and Burrow's unfair trade practices and unfair competition, and to account for all gains, profits and advantages derived by Burrow through such unfair trade practices and unfair competition; and

b. That defendants and their officers, directors, agents, servants, employees, servants, representatives, attorneys, related companies, successors, assigns, and all others in active concert or participation with them or any of them take affirmative steps to dispel such false impressions that heretofore have been created by the Lookalikes; and

c. Exemplary and punitive treble damages and attorney's fees as permitted by 15 U.S.C.A. §1117(a).

4. With respect to the fifth claim for relief, for unjust enrichment:

a. Actual damages plus exemplary and punitive damages;

5. That defendants pay to Bretillot the costs and disbursements of this action and reasonable attorney's fees to be allowed Bretillot by the court.

6. For such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury in this action.


BARRY R. FEERST & ASSOCIATES (BRF-3836)

By: _____/s/_____
          Attorneys for Plaintiff
          194 South 8th Street
          Brooklyn, New York 11211
          (718) 384-9111

Dated: Brooklyn, New York
       November 13, 2014